*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1610**

The Centennial Fire Fighters Relief Association, et al., petitioners,
Appellants,

vs.

The City of Lino Lakes, et al.,
Respondents,

Anoka County Auditor, Jonell Sawyer in her official capacity, et al.,
Respondents,

Minnesota Secretary of State, Steve Simon, in his official capacity,
Respondent.

**Filed June 1, 2015
Affirmed
Rodenberg, Judge**

Anoka County District Court
File No. 02-CV-14-4959

Erick G. Kaardal, Mohrman, Kaardal & Erickson, P.A., Minneapolis, Minnesota (for
appellants)

Joseph J. Langel, Ashley R. Geisendorfer, Ratwik, Roszak & Maloney, P.A.,
Minneapolis, Minnesota (for respondents City of Lino Lakes, et al.)

Anthony C. Palumbo, Anoka County Attorney, Christine Carney, Assistant County
Attorney, Anoka, Minnesota (for respondents Jonell Sawyer, et al.)

Lori Swanson, Attorney General, Nathan J. Hartshorn, Kimberly Middendorf, Assistant
Attorneys General, St. Paul, Minnesota (for respondent Steve Simon)

Considered and decided by Rodenberg, Presiding Judge; Johnson, Judge; and Stoneburner, Judge.[*]

## UNPUBLISHED OPINION

**RODENBERG**, Judge

Appellants challenge the district court's denial of their request for a writ of mandamus. We affirm.

## FACTS

The cities of Centerville, Circle Pines, and respondent Lino Lakes entered into a Joint Powers Agreement (JPA) in January 1990 pursuant to their authority under Minn. Stat. § 471.59, subd. 1 (1990). The JPA created the Centennial Fire District (Fire District) "to jointly and cooperatively provide fire protection services" to all three cities. The JPA allows any signatory city to withdraw from the Fire District by providing "a minimum of two years notice to the remaining municipalities" involved in the JPA. In January 2014, the city council of respondent Lino Lakes adopted a resolution to withdraw from the Fire District and provide two years' notice of its intent to do so. City staff, acting pursuant to the resolution, gave notice of respondent's withdrawal to the other two cities.

The Centennial Fire Fighters Relief Association and members of the Lino Lakes electorate (appellants) circulated an initiative petition to place a proposed ordinance on the November 2014 general election ballot.[1] The proposed ordinance provides:

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

2

219.01 Voter Approval. Any action taken by the City Council, the effect of which authorizes the withdrawal from the Centennial Fire District, shall require the City Council to submit the question of withdrawal to the qualified electors of the City of Lino Lakes at either a special election called for that purpose or at a regularly scheduled general municipal or statewide election. The City Council shall thereafter take such action only if the withdrawal is affirmed by a vote of the City's qualified electors at such election. Any such action to withdraw from the Centennial Fire District pending at the time this ordinance is adopted shall be subject to the requirements stated herein.

In August 2014, the city council declined to put the proposed ordinance before the voters on the November 2014 general election ballot, concluding that "the petition seeks to annul the Council's authority over this administrative matter [the withdrawal from the Fire District] and is, therefore, invalid."

Appellants sought a peremptory writ of mandamus from the district court "requiring voter approval for withdrawal from the Centennial Fire District and ensure it be placed on the November 4, 2014 ballot." The district court denied the petition for writ of mandamus and this appeal followed.

## D E C I S I O N

### I.

Respondents Lino Lakes and Anoka County argue that the issue of whether the district court erred in denying appellants' petition for a writ of mandamus is moot because the November 2014 general election has passed and we are therefore unable to grant the requested relief. Although appellants concede, as they must, that the mandamus

---

[1] It is undisputed that the petition was brought appropriately under the Lino Lakes City Charter.

3

petition by its terms sought only to have the question placed on the November 2014 ballot, appellants maintain that the issue is not moot. Appellants argue there is an adequate remedy, and that we might either order the placement of the proposed initiative on the ballot for a future general election or that we might order a special election. Appellants also argue that, even if it is moot, this case presents an important public issue of statewide significance and that we should therefore resolve this case on the merits.

It is well settled that courts may only decide actual controversies. *State ex rel. Bennett v. Brown*, 216 Minn. 135, 138, 12 N.W.2d 180, 181 (1943); *In re Guardianship of Tschumy*, 853 N.W.2d 728, 735 (Minn. 2014). "If the court is unable to grant effectual relief, the issue raised is deemed to be moot resulting in dismissal of the appeal." *Houck v. E. Carver Cnty. Schs.*, 787 N.W.2d 227, 231 (Minn. App. 2010) (quotation omitted).

An exception to the mootness doctrine includes issues capable of repetition and yet evading review. *Id.* This exception requires that "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* (citing *Kahn v. Griffin*, 701 N.W.2d 815, 821 (Minn. 2005) (quotation marks omitted)). Ultimately, "[m]ootness is . . . a flexible discretionary doctrine, not a mechanical rule that is invoked automatically." *Houck*, 787 N.W.2d at 231 (quotation omitted).

The only relief requested in appellants' petition for a writ of mandamus was that the proposed ordinance "requiring voter approval for withdrawal from the Centennial Fire District be placed on the November 4, 2014 ballot." Whether designedly or by

4

inadvertence, appellants' petition to the district court requested neither a special election nor placement of the question on the ballot at any post-2014 general election. On appeal, appellants have substantially changed their request for relief, now requesting that we order a special election or that we order respondents to put the ballot question before the voters at the November 2015 general election. These arguments for relief were not raised to the district court and are therefore waived.[2] *Thiele v. Stitch*, 425 N.W.2d 580, 582 (Minn. 1988).

As we are unable to grant the relief requested of the district court, placement of this ballot petition on the November 2014 general election ballot, this case is moot. *Houck*, 787 N.W.2d at 231. However, because this issue is capable of repetition but likely to evade review, we exercise our discretion to reach the merits of the question of whether this petition was lawful for placement of the proposed ballot question before the electorate.

---

[2] We also observe that, in requesting on appeal that we order a special election, appellants would have us ignore or overwrite the city ordinance pertaining to the signature requirements for a special election. Lino Lakes, Minn., City Charter ch. V, § 5.03 (2014). Appellants cite no authority for the notion that three appellate judges might under any circumstances undertake to rewrite a home-rule charter city's requirements for a special election.

**II.**

"Mandamus is an extraordinary remedy." *N. States Power Co. v. Minn. Metro. Council*, 684 N.W.2d 485, 491 (Minn. 2004). A writ of mandamus may issue "to compel the performance of an act which the law specially enjoins." Minn. Stat. § 586.01 (2014).[3]

In order to prevail, appellants are required to show that (1) respondents "failed to perform an official duty clearly imposed by law"; (2) appellants "suffered a public wrong" and were "specifically injured" by respondents' failure to perform that official duty; and (3) appellants have no adequate remedy other than a writ of mandamus. *Breza v. City of Minnetrista*, 725 N.W.2d 106, 109-10 (Minn. 2006) (quotations omitted).

We review the language of ordinances in the same manner we review statutes. *Eagle Lake of Becker Cnty. Lake Ass'n v. Becker Cnty. Bd. of Comm'rs*, 738 N.W.2d 788, 792 (Minn. App. 2007). First, we look to whether the language in an ordinance is clear and unambiguous. *Id.* If the language is unambiguous, then we apply the plain language. *Amaral v. St. Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn. 1999). Language in an ordinance is ambiguous only if it "is subject to more than one reasonable interpretation." *Id.*

Lino Lakes is a home-rule charter city and has adopted a charter. *See* Minn. Stat. § 410.015 (2014). The charter allows for the voters in Lino Lakes "to initiate and adopt ordinances, to require ordinances passed by the Council to be referred to the electorate for approval or disapproval, and to recall elected public officials." Lino Lakes, Minn.,

---

[3] Appellant sought a peremptory writ. A peremptory writ is appropriate when "the right to require performance of the act is clear, and no valid excuse for nonperformance can be given." *Coyle v. City of Delano*, 526 N.W.2d 205, 208 (Minn. App. 1995).

City Charter ch. V, § 5.01 (2014)  The right of the electorate to influence the affairs of a city council is limited to influencing the passage and repeal of ordinances, and recall and removal (which is not involved in this case).  Minn. Stat. § 410.20 (2014); *Hous. & Redev. Auth. v. City of Minneapolis*, 293 Minn. 227, 234-35, 198 N.W.2d 531, 536-37 (1972), *Hanson v. City of Granite Falls*, 529 N.W.2d 485, 487 (Minn. App. 1995).  Said differently, the power of referendum is limited to legislative acts and may not interfere with administrative or quasi-judicial acts.  *Hanson*, 529 N.W.2d at 488; *see also Oakman v. City of Eveleth*, 163 Minn. 100, 107, 203 N.W. 514, 517 (1925) (stating that "the theory of initiative and referendum was directed at supposed evils of legislation alone").

The district court held that, because the proposed ordinance sought to submit to a vote "any action" of the city council concerning withdrawal from the Fire District, the proposed ordinance unlawfully encompassed administrative acts.  And because the proposed ordinance was unlawful, the petition for its inclusion on the November 2014 general election ballot imposed no duty on respondents, and therefore no writ could be issued.

The district court based its denial of mandamus relief on the conclusion that the proposed ordinance was unlawful.  "When a decision on a writ of mandamus is based solely on a legal determination, we review that decision de novo." *Breza*, 725 N.W.2d at 110.

Appellants concede that the power of referendum in a home-rule charter city is limited to legislative acts.  But they argue that the word "actions" in the proposed ordinance is properly limited to legislative actions only.  Appellants reason that the word

7

"action" is used in the charter to refer to legislative actions and therefore the word "action" in the proposed ordinance mirrors the charter and may be circumscribed as such.

But the city charter refers explicitly to both legislative actions and administrative actions. It also uses the word "action" to encompass the adoption of ordinances, resolutions, and motions, the latter two of which are explicitly considered by the charter to be "administrative business" of the council. Appellants' argument amounts to a request that we refine their petition and draft it anew. Appellants, who chose the language of the petition, broadly defined the scope of the proposed ordinance to include "any action."

The plain language of the proposed ordinance is subject to only one reasonable interpretation. The proposed ordinance plainly states that a vote of the electorate is required for "any action . . . the effect of which authorizes the withdrawal from the Centennial Fire District." "Any action" plainly includes both legislative and administrative actions. Appellants' failure to limit the language in the proposed ordinance to legislative actions, appropriate under the law for required referenda, renders the proposed ordinance unlawful under Minn. Stat. § 410.20. Respondents were therefore under no duty to place the proposed ordinance on the ballot. *Hanson*, 529 N.W.2d at 488; *see also Hous. & Redev. Auth.*, 293 Minn. at 235, 198 N.W.2d at 537.

Appellants would have us act beyond our proper role as an error-correcting court. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988); *Lake George Park, L.L.C. v. IBM Mid-America Emps. Fed. Credit Union*, 576 N.W.2d 463, 466 (Minn. App. 1998), *review*

8

*denied* (Minn. June 17, 1998). It is not for us to repair the obvious infirmities of appellants' proposed ordinance. The district court properly denied the writ.

Respondent Lino Lakes agreed at oral argument that, if a proposed ordinance complying with Minn. Stat. § 410.20 and the city charter is presented for inclusion on a future general or special election ballot, it will not oppose a placement of such a question before the electorate. But, as Lino Lakes rightly notes, and as the district court properly determined, an ordinance that, by its terms, improperly seeks to require voter approval for administrative city actions may not properly be put before the voters. The district court was correct and the writ was properly denied.[4]

**Affirmed.**

---

[4] Respondents Anoka County and the Secretary of State argue that they are not proper parties to this action. Because our holding affirms the district court's refusal to grant the writ of mandamus, we do not reach the issue of whether they were properly parties to this suit.